UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES WILLIAMS,

    Petitioner,

v.                                             Case No. 8:17-cv-1869-T-27AEP
                                              Criminal Case No. 8:15-cr-470-T-27AEP

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

**BEFORE THE COURT** are Petitioner Williams' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Dkt. 1), the United States' Response (Dkt. 9), and Williams' Reply (Dkt. 12). Upon review, Williams' § 2255 motion is **DENIED**.

## BACKGROUND

In 2015, Williams was indicted and charged with conspiracy to possess with intent to distribute 500 grams or more of cocaine (Count One), possession with intent to distribute 500 grams or more of cocaine (Count Two), and possession with intent to distribute marijuana (Count Three). (cr Dkt. 1). Williams pleaded guilty to Count One pursuant to a plea agreement, and the remaining counts were dismissed. (cr Dkt. 26 at 1, 3; cv Dkt. 3 at 26).

At his change of plea hearing, Williams stipulated to the plea agreement's factual basis. (cr Dkt. 58 at 28-29). In short, the United States Postal Inspectors found approximately three kilograms of cocaine inside a package addressed to Mr. Williams, 420 Tucker Street, Lakeland, Florida. (Id. at 28). Law enforcement obtained an anticipatory search warrant for the address and

1

equipped the package with a tracking device. (Id. at 28-29). The package was delivered to the address, and Williams received it. (Id. at 29). Officers searched the residence and found 3,029 grams of cocaine and 15,913 grams of marijuana that was packaged for distribution. (Id.). According to the presentence report ("PSR"), officers also found five firearms, with one "on the ground in close proximity to the marijuana." (PSR ¶ 14).

At the change of plea hearing, Williams also acknowledged that he understood the charge against him, had discussed his options with his counsel, and was fully satisfied with his representation. (cr Dkt. 58 at 7-9). He further confirmed that no one forced him or promised him anything in exchange for his guilty plea, and that by pleading guilty he was giving up constitutional rights, including his right to a jury trial. (Id. at 7, 23-25). The Court also explained that an advisory guidelines range would be determined based on the United States Sentencing Guidelines and confirmed that he discussed the guidelines with counsel (Id. at 11, 21). And he was informed that the conspiracy count carried a mandatory minimum sentence of 5 years imprisonment, with a statutory maximum of 40 years. (Id. at 27). Williams' plea was found to be knowing, intelligent, and voluntary, and he was adjudicated guilty. (Id. at 31; cr Dkt. 34).

The Probation Office determined that, based on the amount of drugs involved, Williams' offense level was 26. (PSR ¶ 22). And a two-level enhancement was applied because firearms and ammunition were found inside the residence. (Id. ¶ 23). With a three-level reduction for acceptance of responsibility and a criminal history category of III, Williams' guidelines range was 70 to 87 months imprisonment. (Id. ¶¶ 29-31, 40, 78). In accord with the plea agreement, the United States filed a motion for a downward departure based on Williams' substantial assistance, which allowed for a sentence below the five-year mandatory minimum. (cr Dkts. 47, 49, 50, 26 at 5).

Counsel filed a sentencing memorandum, arguing that, among other things, the firearm enhancement was inapplicable. (cr Dkt. 42). He contended that Williams

> was utilizing the residence for the sole purpose of receiving narcotics. He neither owned the property nor resided there. [His] uncle owned the residence. At the time of the offense, he was living with his paramour. He did not own the firearm. He was unaware that any such firearm was in the residence. Given these and other facts, the presence of the firearm was purely coincidental and unrelated to the crime.

(Id. at 5).

At sentencing, counsel withdrew the objection to the firearm enhancement. (cv Dkt. 3 at 4). He also requested a five-level reduction for Williams' cooperation with the government and unsuccessfully argued that Williams' criminal history was overrepresented. (Id. at 8-15). The Court granted a downward departure based on Williams' substantial assistance and awarded a three-level reduction for acceptance of responsibility, which resulted in a guidelines range of 51 to 63 months. (Id. at 10, 24-25). After consideration of the § 3553(a) factors, the Court sentenced Williams to 48 months imprisonment. (Id. at 22-25).

Counsel also requested that the Court recommend Williams for the Bureau of Prison's (BOP) Residential Drug Abuse Program (RDAP). (Id. at 26). The Court responded, "I'll recommend designation at Coleman and if eligible the defendant be allowed to participate in the 500-hour intensive drug treatment program known as RDAP. In support of that recommendation I will incorporate as my findings paragraph 62 through 64 of the presentence report." (Id.). Williams did not appeal the conviction or sentence.[1] (cv Dkt. 1 at 2).

---

[1] The plea agreement included an appeal waiver, by which Williams "expressly waive[d] the right to appeal [his] sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds [his] applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that

He raises two claims in his timely § 2255 motion, both relating to his ineligibility to receive a sentence reduction for completing RDAP. (cv Dkt. 1). In Ground One, he contends that he

> was denied the effective assistance of counsel when defense counsel did not object to the Presentence Investigation Report. At the time Mr. Williams entered his guilty plea, he believed that he would be eligible to receive a one-year sentence reduction by successfully completing [RDAP] once incarcerated. His attorney . . . assured him of this. This court augmented Mr. Williams's belief when the court [recommended] Mr. Williams for the program. [Counsel], however, overlooked certain facts within the [PSR] that precluded Mr. Williams from receiving the one-year sentence reduction. In particular, the PSR contained evidence of a passive possession of a firearm by a co-defendant. This finding of Pinkerton-type liability (despite its passive nature) reached beyond the sentencing court and, in conjunction with the Bureau's own definitions of violence, caused the Bureau to decide that the "violent" nature of Mr. Williams's non-violent crime makes him ineligible for the sentence reduction he earned. The Bureau policy is well established; but for counsel's misadvice about that policy, Mr. Williams would not have pleaded guilty as he did.

(cv Dkt. 1 at 4-5). Williams similarly alleges in Ground Two that his "guilty plea was unintelligently made since he understood that part of the plea agreement included his eligibility to earn a one year sentence reduction through participating in [RDAP]." (Id. at 6). As he clarifies in his Reply,[2] he "understood that *if* the BOP allowed him to participate in RDAP, which according to his attorney was a likelihood based on his criminal history especially if this court recommended it, then he would earn a one year reduction in his sentence." (Dkt. 12 at 1 (emphasis in original)).

---

the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution." (cr Dkt. 26 at 15).

[2] This Court is mindful of its responsibility to address and resolve all claims raised in Williams' motion. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (instructing "the district courts to resolve all claims for relief raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254"). That said, nothing in *Clisby* requires or suggests consideration of a claim raised for the first time in a reply.

He requests that the Court modify the PSR to remove the reference to his "co-defendant's passive possession" and reduce the sentence by twelve months "in order that he receive the benefit of his bargain." (cv Dkt. 1 at 14). In its response, the United States contends that the claims are procedurally defaulted and without merit. (cv Dkt. 9).[3]

## DISCUSSION

As this Circuit has noted, "[s]ection 3621(e)(2)(B) of Title 18 grants the BOP discretion to reduce by up to one year the sentence of a prisoner who successfully completes a substance abuse treatment program, but makes that reduction available only to 'a prisoner convicted of a nonviolent offense.' Because the statute does not define 'nonviolent offense,' it fell to the BOP to define that term in keeping with the statutory purposes." *Cook v. Wiley*, 208 F.3d 1314, 1317 (11th Cir. 2000) (citations omitted).

BOP regulations provide that inmates who have a current felony conviction for "[a]n offense that involved the carrying, possession, or use of a firearm or other dangerous weapon" or that "by its nature or conduct, presents a serious potential risk of physical force against the person

---

[3] In an affidavit attached to the United States' response, Williams' counsel avers that

> After considering and reviewing the various mitigating factors and options under the Sentencing Guidelines, I discussed with Mr. Williams . . . that his entry into [RDAP] could result in a reduction in his sentence. I explained to him that his admission into RDAP would be solely determined by [BOP].
>
> I further explained to him that I would ask the district court, as I do with all defendants with a drug history, to recommend that he be admitted into RDAP. . . At no time did I promise Mr. Williams that his entry into RDAP was guaranteed.

(cv Dkt. 9-1 at 2-3). These averments seem largely consistent with Williams' statements, although Williams does contend that his counsel "assured him" that "he would be eligible to receive a one-year sentence reduction by successfully completing [RDAP]." (cv Dkt. 1 at 4). In any event, it is unnecessary to rely on counsel's affidavit to resolve the motion, and an evidentiary hearing is not required because the § 2255 motion "and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

or property of another" are not eligible for early release. 28 C.F.R. § 550.55(b)(5)(ii), (iii). A BOP Program Statement further provides that because the Specific Offense Characteristic of possession of a dangerous weapon during the commission of a drug offense "poses a serious potential risk that force may be used against persons or property," an inmate who received the enhancement "has been convicted of an offense that will preclude [him] from receiving certain Bureau program benefits." Program Statement 5162.05, Section 4.[4] Yet "[e]ven if a prisoner is deemed statutorily eligible for the sentence reduction, the decision about whether to reduce his sentence remains solely within the discretion of the BOP," and "that decision is not subject to judicial review." *Cook*, 208 F.3d at 1318-19 (citations omitted).

At bottom, Williams contends that his counsel was ineffective by incorrectly advising him that he would be eligible for a sentence reduction following RDAP. Although his contention that counsel was ineffective is not procedurally defaulted, it is without merit. His claim that his guilty plea was not intelligently made is both procedurally defaulted and without merit.

*Procedural Default*

As the United States correctly contends, the challenge to the guilty plea, which could have been brought on direct appeal, is defaulted. (cv Dkt. 9 at 6). The ineffective assistance of counsel claim, however, is properly raised in a collateral proceeding and is therefore not defaulted.

The Supreme Court has found that "it is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel,

---

[4] The Supreme Court has held that the BOP may categorically deny early release to prisoners based on conduct that triggers the firearm sentencing enhancement. *Lopez v. Davis*, 531 U.S. 230, 244 (2001); *see also Barr v. United States*, No. 4:16-cv-108/WS/EMT, 2016 WL 6841691, at *5 (N.D. Fla. Oct. 28, 2016), *report and recommendation adopted sub nom. Barr v. Flournoy*, No. 4:16-cv-108-WS/EMT, 2016 WL 6832635 (N.D. Fla. Nov. 18, 2016) (finding that the BOP had discretion to deny petitioner early release due to a conviction for possession with intent to distribute and a firearm enhancement).

6

may not be collaterally attacked" and "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998); *see also United States v. Goodman*, No. 3:14-cr-98/TKW/EMT, 2019 WL 4145069, at *16 (N.D. Fla. Aug. 9, 2019), *report and recommendation adopted*, 2019 WL 4144309 (N.D. Fla. Aug. 30, 2019). Ineffective assistance of counsel claims, on the other hand, are typically brought in a collateral proceeding and not on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 509 (2003); *United States v. Balcazar*, 775 F. App'x 657, 660 (11th Cir. 2019).

The Eleventh Circuit explains:

> A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral proceeding, when a defendant could have raised an issue on direct appeal but did not do so. . . . Defendants can avoid the procedural bar by establishing that either of the following exceptions applies: (1) cause and prejudice, or (2) a miscarriage of justice based on actual innocence.

*Hill v. United States*, 569 F. App'x 646, 648 (11th Cir. 2014) (citations omitted). Williams has not established cause and prejudice or actual innocence to excuse the default of the claim that his guilty plea was not intelligent.

To demonstrate "cause," Williams must show that "some objective factor external to the defense" impeded his ability to raise the issue on direct review. *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004). Although ineffective assistance of counsel can constitute cause, *see Murray v. Carrier*, 477 U.S. 478, 488-89 (1986), as discussed below, his counsel was not ineffective. And courts have found that the existence of an appeal waiver does not constitute cause,

since the waiver is "attributable to [a defendant's] own conduct." *See Barron v. United States*, No. 7:10-cr-24 HL, 2014 WL 1255206, at *4 (M.D. Ga. Mar. 26, 2014) (collecting cases).[5]

To establish actual innocence, Williams must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (internal quotation marks and citations omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. Williams does not contend that he is innocent of the crime of conviction, and the stipulated factual basis belies any such contention.

In the absence of a showing of cause and prejudice or actual innocence, the challenge to the guilty plea is procedurally defaulted. Williams' ineffective assistance of counsel claim is not procedurally defaulted. To the extent he argues that his guilty plea was unintelligently made due to ineffective assistance of counsel, that claim is not procedurally defaulted but is also without merit.

*Ground One: Ineffective Assistance of Counsel*

Williams contends that counsel was ineffective in failing to object to the facts in the PSR relating to the firearms. (Dkt. 1 at 4-5). Construing the claim liberally, he also contends that counsel was ineffective in advising him that he was eligible for a sentence reduction based on completion of RDAP. (Id.). Both contentions are without merit.[6]

---

[5] Although an appeal waiver "which is part of a guilty plea is unenforceable if the plea itself is involuntary or unintelligent," *see United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015), as discussed below, Williams' plea was voluntary and intelligent.

[6] Additionally, by pleading guilty, Williams waived all non-jurisdictional challenges to his conviction, including claims of pre-plea ineffective assistance of counsel, that do not relate to his decision to plead guilty. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). Accordingly, to the extent his claims involve pre-plea ineffective assistance of counsel unrelated to his decision

To establish ineffective assistance of counsel, Williams must demonstrate that (1) counsel's performance was constitutionally deficient, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. And "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citations omitted).

The *Strickland* test also applies to challenges of guilty pleas. *See Scott v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009). The Eleventh Circuit explains:

> In this context, the first prong of *Strickland* requires the defendant to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. The second prong focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process, meaning the defendant must show a reasonable probability that, but for counsel's errors, he would have entered a different plea.

*Id.* at 824 (internal quotation marks and citations omitted); *see also Lafler v. Cooper*, 566 U.S. 156 (2012). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial," and "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir.

---

to plead guilty, they are waived.

1984). Counsel must make an "independent examination of the facts, circumstances, pleadings and laws involved, [and] offer his informed opinion as to the best course to be followed in protecting the interests of the client." *Id.* Collateral relief is only available if a petitioner "prove[s] serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *Lopez v. Reid*, No. 2:14-cv-584-FtM-38MRM, 2017 WL 2869405, at *2 (M.D. Fla. July 5, 2017) (quoting *McMann v. Richardson*, 397 U.S. 759, 774 (1970)).

Because Williams cannot demonstrate that his counsel's performance was constitutionally deficient or that he was prejudiced as a result of any deficiency, his ineffective assistance of counsel claims fail.

First, contrary to Williams' claim, counsel initially did object to the firearm enhancement in his sentencing memorandum. (cr Dkt. 42 at 5). That objection was withdrawn at sentencing for unexplained reasons. (cv Dkt. 3 at 4). Notwithstanding, a reasonable attorney could have determined that maintaining the objection might adversely affect his arguments for an additional two-level reduction based on cooperation, a lower criminal history score, and a downward variance based on § 3553(a) factors. (Id. at 8-13, 17-20); *see McNeal v. Wainwright*, 722 F.2d 674, 676 (11th Cir. 1984) ("Counsel will not be deemed unconstitutionally deficient because of tactical decisions."). It would also be reasonable to predict that the objection was unlikely to succeed, given the admitted facts.[7]

---

[7] Williams does not contend that the facts in the PSR are inaccurate. *See United States v. Davis*, 233 F. App'x 944, 945-46 (11th Cir. 2007); *see also United States v. Beckles*, 565 F.3d 832, 843 (11th Cir. 2009) (noting that a district court "may base its factual findings on undisputed statements found in the PSI, because they are factual findings to which the defendant has assented"). And for the firearm enhancement to apply, the government must

> establish by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated

10

Nor can Williams establish prejudice. Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Denney v. United States*, 619 F. App'x 901, 903 (11th Cir. 2015) (citations omitted). Again, maintaining the objection to the firearm enhancement could have affected Williams' remaining arguments at sentencing. Second, as discussed, he is unable to show that his objection would have been successful. And even if successful, the BOP still had the discretion to deny a sentence reduction based on RDAP. Finally, it does not logically follow that there is a reasonable probability Williams would not have pleaded guilty had counsel maintained the objection, especially since the objection was both filed and withdrawn *after* the change of plea hearing. (cr Dkts. 31, 42, 48).

Turning to Williams' second contention, counsel was not ineffective in providing advice related to a possible sentence reduction based on RDAP. Although the language of the BOP regulation and program statement suggests that, because of the firearm enhancement, Williams was precluded from receiving a sentence reduction, he is unable to show that counsel's performance was deficient.

First, as discussed, Williams pleaded guilty *before* the application of the enhancement in

---

with the offense of conviction. If the government is successful in meeting this initial burden, then the evidentiary burden shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was clearly improbable.

In deciding whether the government satisfied its initial burden, relevant conduct includes acts that were part of the same course of conduct or common scheme or plan as the offense of conviction. More specifically, the government must show that the firearm had some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.

*United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006) (internal quotation marks and citations omitted); *see also United States v. Hansley*, 54 F.3d 709, 716 (11th Cir. 1995) (finding enhancement was properly applied where firearm and drugs were found in residence, where defendant engaged in conspiratorial conversations). Here, the firearm was found in close proximity to drugs at the residence to which Williams had drug packages mailed. He was, moreover, present at the residence when it was searched.

the PSR, the subsequent objection to the enhancement, and the ultimate withdrawal of the objection. At the time of the change of plea hearing, it was therefore not a certainty that a firearm enhancement would be sought, or that any objection to the enhancement would be unsuccessful or later withdrawn. There was no mention of a firearm in either the indictment or the plea agreement. (cr Dkts. 1, 26). Second, Williams provides no authority finding that an attorney's mistaken advice concerning the possibility of up to a one-year reduction in a sentence, which is ultimately subject to the BOP's discretion, constitutes deficient performance.[8] Williams was nonetheless informed of the offense's statutory maximum of 40 years imprisonment at the plea colloquy and in the plea agreement. (cv Dkt. 3 at 27; cr Dkt. 26 at 2).

As for prejudice, Williams contends that, had he known he would be ineligible for a sentence reduction, he would not have pleaded guilty or would have sought to preserve his ability

---

[8] By comparison, courts have found that a misjudgment in sentence length or miscalculation in guidelines range do not constitute ineffective assistance. *See Langford v. United States*, No. CIV.A09-00251WS-M, 2009 WL 6467043, at *9 (S.D. Ala. Oct. 23, 2009), *report and recommendation adopted*, No. CIV. 09-0251-WS, 2010 WL 1949480 (S.D. Ala. May 12, 2010) (citations omitted) ("[A] claim of ineffective assistance of counsel is not supported by a misjudgment in sentence length."); *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (affirming the denial of the defendant's motion to withdraw his guilty plea where, although defense counsel incorrectly predicted the length of the sentence, the defendant was informed of the possible sentence during the plea colloquy); *cf. Thomas v. United States*, 27 F.3d 321, 325 (8th Cir. 1994) (counsel's failure to advise defendant of possible career offender enhancement not ineffective assistance); *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) ("Misinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel.").

Williams cites *Lee v. United States*, 137 S. Ct. 1958 (2017) for the proposition that an "attorney's misadvice that affects the accused's subjective understanding of the plea bargain renders a guilty plea involuntary. A mistake of this nature cannot be waived ex ante." (Dkt. 12 at 2 n.1). To the extent that the BOP's determination that Williams was ineligible for a sentence reduction constitutes a "collateral consequence" of his guilty plea, and counsel's representations constitute "affirmative misadvice," the possibility of a reduction of up to one year is not a "consideration . . . so important that misinformation from counsel may render the guilty plea constitutionally uninformed." *Sims v. United States*, 785 F. App'x 632, 634-35 (11th Cir. 2019). It is unlike, for example, deportation or ineligibility for retirement benefits. *See id.*; *Lee*, 137 S. Ct. 1958; *see also Downs-Morgan v. United States*, 765 F.2d 1534, 1541 (11th Cir. 1985) ("We decline to hold that an affirmative misrepresentation by an attorney in response to a specific inquiry by the accused which results in a plea of guilty necessarily constitutes ineffective assistance of counsel.").

to appeal the imposition of a firearm enhancement. (cv Dkt. 1 at 5; cv Dkt. 12 at 2). But, prior to pleading guilty, he still was facing a sentence of five to 40 years imprisonment on Count One and potential sentences on Counts Two and Three. And, had he gone to trial, he would have lost the benefit of the plea agreement, by which the United States dismissed Counts Two and Three, recommended a three-level reduction for acceptance of responsibility, and filed a motion under USSG § 5K1.1 to allow a sentence below Count One's statutory minimum. (cr Dkts. 47, 50, 26 at 3-5). In fact, the Court imposed a sentence of four years, the same duration of time he would have served with a five-year minimum sentence and a full year reduction for RDAP. (cv Dkt. 3 at 25); *see United States v. Ramirez-Hernandez*, No. 5:08-CR-112-KKC, 2012 WL 1940681, at *7 (E.D. Ky. Apr. 16, 2012), *report and recommendation adopted*, No. 5:08-CR-0112-KKC, 2012 WL 1940604 (E.D. Ky. May 29, 2012) (finding "notion that Defendant would have refused to plead over RDAP eligibility is not credible" because he "got a deal that spared him the mandatory minimum"); *Ogg v. United States*, No. 3:11-0710, 2012 WL 859595, at *3 (M.D. Tenn. Mar. 13, 2012) (same).

Moreover, Williams does not specify in what ways "he would have proceeded differently both in negotiating the plea and at sentencing." (cv Dkt. 12 at 2). There is no indication that the United States would have been willing to modify the appeal waiver to allow him to challenge the firearm enhancement, or that the Court would have accepted such an agreement. He is therefore unable to establish a reasonable probability that the result of the proceeding would have been different without any deficient performance.

In the absence of deficient performance or prejudice, Williams is unable to establish that counsel was ineffective and, accordingly, Ground One is due to be denied.

*Ground Two: Unintelligent Guilty Plea*

Williams next contends his "guilty plea was unintelligently made since he understood that part of the plea agreement included his eligibility to earn a one year sentence reduction through participating in [RDAP]." (cv Dkt. 1 at 6). Williams' contention, however, is without merit.

First, although a guilty plea must be "voluntary" and "intelligent," Williams failed to object to the Magistrate Judge's Report and Recommendation concerning his guilty plea. *See United States v. Barefoot*, 342 F. App'x 480, 484 (11th Cir. 2009) (finding argument that guilty plea was not entered intelligently and knowingly waived because of failure to object to report and recommendation). Second, the Court complied with the requirements of Rule 11 of the Federal Rules of Criminal Procedure, which "imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." *United States v. Symington*, 781 F.3d 1308, 1314 (11th Cir. 2015) (citation omitted). That inquiry "must address three core concerns underlying Rule 11: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *Id.* (internal quotation marks and citations omitted).

Williams' plea colloquy demonstrates that the three core concerns of Rule 11 were met. He acknowledged that the guilty plea was free from coercion, that he understood the nature of the charges, and was aware of the consequences of his guilty plea, including that he was giving up his constitutional right to a jury trial. (cr Dkt. 58 at 7-9, 18-19, 24, 27-29). He was also informed that the conspiracy offense carried a statutory minimum of five years and a maximum of 40 years. (Id.

at 27). Accordingly, the Court correctly found that Williams' plea was knowing and voluntary, and he was adjudicated guilty. (cr Dkt. 58 at 31; cr Dkt. 34).

Although Williams contends that the Court "augmented Mr. Williams's belief [that he would be eligible for a reduction] when the court [recommended] Mr. Williams for the program," (cv Dkt. 1 at 4), the Court did not address the possibility of a sentence reduction for participation in RDAP at sentencing or, more relevant to Williams' claim, the change of plea hearing. In fact, the Court at sentencing recommended that, "*if eligible* the defendant be allowed to participate in the 500-hour intensive drug treatment program known as RDAP. (cv Dkt. 3 at 26) (emphasis added). Finally, he provides no authority finding that a guilty plea was unintelligent due to a mistaken belief about eligibility for such a BOP benefit. *See, e.g.*, *United States v. Perea*, No. CIV.A. 11-2218-KHV, 2012 WL 851185, at *5 (D. Kan. Mar. 8, 2012) ("Defendant argues that his plea was not knowing or voluntary because of counsel's erroneous prediction of RDAP eligibility for early release. Like an erroneous sentence estimate by counsel, however, such a prediction does not render a plea involuntary.").

In short, he has not demonstrated that his guilty plea was not voluntary, knowing, and intelligent. Ground Two is therefore due to be denied.

## IV. Certificate of Appealability ("COA")

Williams is not entitled to a COA. 28 U.S.C. § 2253(c)(1). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citation omitted). Williams has not and cannot meet this standard. Because he is not entitled to a COA, he is not entitled to appeal in forma pauperis.

## CONCLUSION

Williams' § 2255 motion is **DENIED**. The Clerk is directed to enter judgment in favor of the United States and against Williams, and **CLOSE** the case.

**DONE AND ORDERED** this 14th day of February, 2020.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Petitioner, Counsel of Record